UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. 0:14-CV-60652-ROSENBERG/BRANNON

MOBIUS DESIGN GROUP, INC., *a Florida corporation*,

      Plaintiff,

v.

M/Y SERQUÉ, *a 2009 133' custom built vessel, Official Number 1061364, her engines, apparel, Tackle, boats, appurtenances, etc. in rem*,

      Defendant.
_____/

M/Y SERQUÉ, *a 2009 133' custom built vessel, Official Number 1061364, her engines, apparel, Tackle, boats, appurtenances, etc. in rem*,

      Counter Claimant,

v.

MOBIUS DESIGN GROUP, INC., *a Florida corporation*,

      Counter Defendant.
_____/

### ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Plaintiff's Motion for Summary Judgment [DE 51] and Defendant's Motion for Partial Summary Judgment [DE 56]. The Motions have been fully briefed by both sides and the Court heard oral argument on the Motions on April 24, 2015. The Court has

reviewed the documents in the case file and is fully advised in the premises. For the reasons set forth below, both Motions are denied.

## I.   BACKGROUND

The instant admiralty case concerns work done by Plaintiff, Mobius Design Group, Inc. ("Mobius"), on a Crestron A/V system on board Defendant, the M/Y Serque ("Serque"). On March 14, 2014, Mobius filed its Complaint to foreclose its maritime lien against Serque. Mobius alleged that it furnished equipment and labor to Serque between January 2013 and February 2014 in the amount of $80,155.01, which Serque has yet to pay. Serque filed its answer and counterclaims on May 1, 2014. Serque alleged that Mobius misrepresented its ability to, *inter alia*, upgrade the Crestron system for the vessel as Adam Katz, the vessel's beneficial owner, as requested. Serque also alleges that contrary to its representations, Mobius withheld the Crestron system source code, which Serque alleges it owned, from Serque.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most

favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III. LEGAL ANALYSIS

In its Motion for Final Summary Judgment, Mobius seeks summary judgment in its favor as to Count I of its Complaint (Foreclosure of Maritime Lien), Count I of Serque's Counter-Claim (Breach of Contract), Count II of Serque's Counter-Claim (Breach of Warranty of Workmanlike Performance), Count III of Serque's Counter-Claim (Wrongful Arrest of Vessel), Count IV of Serque's Counter-Claim (Conversion), and Serque's affirmative defenses. Serque, in its Motion for Partial Final Summary Judgment, seeks summary judgment in its favor as to Count IV of its Counter-Claim (Conversion).

### A.  Mobius's Claim

Mobius contends that it is entitled to summary judgment on the single count in its Complaint, foreclosure of its maritime lien against Serque. The Federal Maritime Lien Act, 46 U.S.C. §§ 31341 *et seq.*, states that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel," and "may bring a civil action in rem to enforce the lien." Serque does not dispute Mobius's characterization of its repairs as necessaries, and in fact, Serque concedes that Mobius may maintain a valid maritime lien on Serque for equipment provided to it, although Serque maintains that this lien does not extend to any labor Mobius performed on Serque due to Mobius's negligence. *See* DE 70 at 26.

For the reasons discussed *infra*, each of Mobius's affirmative defenses, other than the first, remains intact. Accordingly, genuine questions of material fact exist as to Mobius's claim, and Mobius is not entitled to summary judgment on this point.

### B.  Serque's Counterclaims

#### i.  Breach of Contract (Count I of Serque's Counter-Claim)

First, Mobius contends that Serque's breach of contract counterclaim fails because it is barred by Florida's statutes of frauds, which requires, *inter alia*, that contracts "for the sale of goods for the price of $500 or more" and contracts which are "not to be performed within the space of 1 year from the making thereof" be in writing. *See* Fla. Stat. §§ 672.201(1), 725.01. Mobius's position is that the contract is barred by the statute of frauds, both because it was for the sale of goods in excess of $500, and because the contract's completion took over one year. Second, Mobius argues that Serque has failed to establish that an enforceable contract exists.

The parties have different positions as to the nature of the contract, as both parties made clear at the Court's hearing on the Motions. Also at the hearing, Mobius admitted that its position

4

on the nature of the contracts is not consistent. For example, although Mobius contends that its performance of the subject contract took longer than a year in Part III of its Motion, in the "Background" section, Mobius states:

> Mobius and Serque did not enter into a single written contract. Instead, Serque would detail—orally and in writing—scopes of work it wished to be completed and Mobius would bill Serque on an hourly basis and for materials provided. . . . Thus, each invoice is its own contract or agreement.

DE 51 at 3. Thus, and as Mobius conceded at the hearing, its positions are alternatives to one another.

### a. Statute of Frauds

The Court believes that the simplest way to parse the parties' positions on the first argument raised in Mobius's Motion, the statute of frauds argument, is to divide the parties' arguments on this point into two categories: the sale of goods issue under the UCC statute of frauds, and the performance issue under the general statute of frauds. The UCC statute of frauds, Florida Statute section 672.201, governs the writing requirements for the sale of goods over $500. It states:

> [A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Mobius has not clearly identified any way in which the invoices are insufficient writings under the UCC statute of frauds, at least with respect to the goods which Mobius sold to Serque. Accordingly, Mobius has not met its burden as the movant for summary judgment, *see Shiver*, 549 F.3d at 1343, with respect to its argument that it is entitled to summary judgment on Serque's breach of contract counterclaim under the UCC statute of frauds.

The second issue, performance within one year, is governed by the general statute of frauds, Florida Statute section 725.01. While Mobius stresses that it was under contract with Serque for over one year, the question is not whether performance took longer than a single year; the question is whether the contract was incapable of being performed within a year. *See, e.g.*, *LaRue v. Kalex Constr. & Dev., Inc.*, 97 So. 3d 251, 256 (Fla. Dist. Ct. App. 2012). Mobius's only evidence that the contract was incapable of being performed within a single year is an interrogatory response in which Serque references the installation of an Xbox One. *See* DE 51 at 14. Mobius contends that its relationship with Serque (and thus, the contract), began fifteen months prior to the date of the Xbox One's release, therefore setting the bounds of the contract outside of one year, and putting it squarely within the statute of frauds. *Id.* The Court does not find Mobius's argument on this point persuasive. Serque's *post hoc* assessment of the contract cannot support Mobius's position that at the time the parties entered into the contract, it was impossible for that contract to be completed in under one year—especially where, as here, Mobius itself has defined the invoices themselves as a series of discrete contracts in the alternative.[1] Accordingly, the Court finds that the statute of frauds does not bar Count I of Serque's Counter-Claim, and Mobius's Motion for Summary Judgment is denied on this point.

### b.     Existence of an Enforceable Contract

Second, Mobius contends that Serque has not established the existence of an enforceable contract. "Before an action for breach of contract can be sustained, there must be an enforceable contract." *Bus. Specialists, Inc. v. Land & Sea Petroleum, Inc.*, 25 So. 3d 693, 695 (Fla. Dist. Ct. App. 2010). "[A] meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract." *Acosta v. Dist. Bd. of Trustees of Miami-Dade Cmty.*

---

[1] To the extent that Mobius makes other arguments on this point and in this section of the Motion, the Court finds those arguments unpersuasive.

*Coll.*, 905 So. 2d 226, 228 (Fla. Dist. Ct. App. 2005) (internal quotation marks omitted). "When essential terms are left open for negotiation, there is no meeting of the minds." *Bus. Specialists*, 25 So. 3d at 695.

Mobius's argument rests on what are, in its view, contradictory positions taken by Serque with respect to the nature of the contract. Mobius highlights, specifically, a response by Serque to one of its interrogatories; the May 7, 2012 email which Mobius targets as the beginning of the parties' contractual relationship; and a question posed by Serque's counsel during Ms. Horn's deposition, in which counsel arguably referred to the invoices as a series of separate contracts. *See* DE 51 at 15–16.

The Court finds that these discrepancies, to the extent that they can be termed such, do not entitle Mobius to summary judgment on Serque's breach of contract counterclaim. The Court has reviewed the invoices attached to Mobius's Complaint, and the invoices themselves are highly specific and certainly sufficient to create an enforceable contract. To the extent Serque intends to supplement those invoices with parol evidence, Mobius has not clearly identified any essential terms left open for negotiation. As Serque described the contract at the hearing, it was one which evolved over time. It is not surprising, therefore, that a May 2012 email may differ from an interrogatory response, or counsel's subsequent characterization of the contract. Thus, the Court finds that Mobius is not entitled to summary judgment on Count I of Serque's Counter-Claim for this reason either.

> ii.  Breach of Warranty of Workmanlike Performance (Count II of Serque's Counter-Claim)

Mobius argues that it is entitled to summary judgment on Serque's breach of warranty of workmanlike performance counterclaim because Serque has failed to present sufficient evidence of a breach. "The warranty of workmanlike performance arises out of the contract principle that

7

one who contracts to provide services to another impliedly agrees to perform such services in a diligent and workmanlike fashion; i.e., to perform the services properly and safely." *Burnett v. A. Bottacchi S.A. de Navegacion*, 882 F. Supp. 1050, 1053 (S.D. Fla. 1994). "The . . . negligence which breaches [a] warranty of workmanlike performance is a question of fact, to be decided by the trier of fact." *Cia Maritima Del Nervion v. James J. Flanagan Shipping Corp., Stevedore Div.*, 308 F.2d 120, 123 (5th Cir. 1962); *see also S. Stevedoring & Contracting Co. v. Hellenic Lines, Ltd.*, 388 F.2d 267, 270 (5th Cir. 1968).[2]

Mobius bases its position largely on testimony by Serque's expert, Ronald Callis, who stated at one point in his deposition, "I can tell you fundamentally most things worked, most things worked [on Serque]. We did not see the boat in a catastrophic situation. The issue was primarily around tweaks, changes, modifications that Adam [Katz] wanted." DE 51 at 104.[3] Serque argues a number of grounds for Mobius's negligence, but its central thesis be found in an excerpt from the summary of Mr. Callis's anticipated expert testimony: Serque's position is that "Mobius essentially continued to patch-up superficial issues on the Serque without addressing the issue at the core of all of the problems on the Serque." DE 70 Ex. 2 at 3.[4]

Serque has put forth sufficient evidence of Mobius's negligence to withstand Mobius's motion for summary judgment. Mr. Callis is expected to testify that Mr. Katz did not receive the services for which he contracted due to Mobius's negligence; this anticipated testimony does not directly contradict what he said in his deposition, and to the extent that it does, Mobius will be able to cross-examine him on these points at trial. Moreover, and as noted above, negligence is

---

[2] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).
[3] Mobius cites numerous excerpts from Mr. Callis's deposition. *See* DE 51 at 17–19. The Court declines to reprint them, but notes that it has reviewed all cited excerpts.
[4] The Court notes the dispute between the parties as to whether or not Mark D'Angelo, whose affidavit was attached to Serque's response, can offer expert testimony. The Court need not address this dispute, as it does not rely on Mr. D'Angelo's affidavit to reach its ruling.

generally a question for the trier of fact. Accordingly, Mobius's Motion for Summary Judgment is denied with respect to Count II of Serque's Counter-Claim.

### iii. Wrongful Arrest of Vessel (Count III of Serque's Counter-Claim)

Serque has indicated that it does not oppose Mobius's Motion as to Count III of Serque's Counter-Claim for wrongful arrest of the vessel. *See* DE 70 at 10. Accordingly, Mobius's Motion for Summary Judgment is granted with respect to Count III of Serque's Counter-Claim.

### iv. Conversion (Count IV of Serque's Counter-Claim)

The parties do not dispute the legal standard to be applied in this case. "A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Star Fruit Co. v. Eagle Lake Growers*, 33 So. 2d 858, 860 (1948). Mobius contends that Serque lacks a possessory interest in the Crestron source code, and accordingly, Mobius is entitled to summary judgment on this counterclaim. Serque, in its Motion for Partial Summary Judgment, argues that it *does* have a possessory interest in the Crestron source code, and that it is entitled to summary judgment on its conversion counterclaim.

Language in the contract between the parties may inform the Court's assessment of the ownership of the intellectual property at issue. *See Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890 (D. Minn. 2014). In this case, the contract is either one oral contract incorporating the invoices, or a series of discrete contracts, each represented by a single invoice. Mobius considers the issue of the source code's ownership to be outside the bounds of the parties' contractual agreement, and looks to industry standards to fill the gap. Serque, for its part, believes that Mobius promised not to withhold the source code as part of its contractual agreement with Serque.

Both positions have support in the record evidence. Mobius relies on testimony by Mobius employee Vicki Shand-Horn, its expert, Mike Leitensdorfer, and Serque's expert, Ronald Callis, to support its position that Serque did not retain a possessory interest in the source code. Ms. Shand-Horn testified at her deposition that "[when] a Crestron dealer enters into a relationship with a client, within those terms and conditions it is shared and understood that the [source] code becomes the property of the client on full payment of invoices." DE 58 at 16:2–13. Mr. Leitensdorfer testified at his deposition that "[a] [source] code would never be turned over unless payment was received in full." DE 51 at 125. Mr. Callis testified at his deposition that he would not turn over the source code to a client with outstanding invoices. *See id.* at 108–109.

Serque, on the other hand, contends that it *did* retain a possessory interest in the source code. Serque relies on assurances made by Mobius (specifically, Ms. Shand-Horn) to Adam Katz that Mobius would not withhold the Crestron system source code from a client to support its position. *See, e.g.*, DE 70 Ex. 5 ¶¶ 4–6; *see also* DE 70 Ex. 12 ¶¶ 5, 11. Serque also contends that Mobius's own expert, Mr. Leitensdorfer, agrees with its position; however, Mr. Leitensdorfer's testimony on this point is less than clear. He indicated that the source code would normally be turned over to the client within "approximately 30 days of completion of the project," DE 57 at 39:19–23, and referred to modifications of an existing source code as a "gray [area]," *id.* at 39:24–40:7.

As noted, both parties' positions have support in the record. The Court thus finds that there exists a genuine dispute as a material fact: namely, Serque's possessory interest (or lack thereof) in the Crestron source code. Accordingly, both parties' Motions for summary judgment are denied with respect to Count IV of Serque's Counter-Claim.[5]

---

[5] The Court does not address the other arguments which Mobius has made in its Response to Serque's Motion for Partial Summary Judgment, as it finds that Serque's Motion should be denied for the reasons stated above.

10

### C. Serque's Affirmative Defenses

Finally, Mobius argues that each of Serque's four affirmative defenses should be stricken from its Answer. A motion to strike an affirmative defense under Rule 12(f) may be granted where the affirmative defense is insufficient as a matter of law, that is if "it is patently frivolous, or if it is clearly invalid as a matter of law." *Aidone v. Nationwide Auto Guard, L.L.C.*, 295 F.R.D. 658, 661 (S.D. Fla. 2013). Serque's first affirmative defense states that "Mobius is barred and estopped from obtaining the relief requested because the Complaint fails to state a claim for which relief can be granted." DE 20 at 2. Serque concedes to the striking of that affirmative defense insofar as it acknowledges that a valid maritime lien exists by Mobius, but only for the equipment paid for by Mobius and provided to Serque. *See* DE 70 at 27. Serque's second affirmative defense states that "Mobius is barred and estopped from obtaining the relief requested in whole or in part, due to its own negligence." DE 20 at 2. As discussed above, Mr. Callis's anticipated expert testimony lays a foundation for Serque's arguments on this point. The defense is neither "patently frivolous" nor "clearly invalid as a matter of law." For this reason, the Court will not strike Serque's second affirmative defense. As to Serque's third and fourth affirmative defenses, which pertain to Mobius's alleged breach of contract, Mobius relies on the arguments made in Section III of its Motion addressing Serque's breach of contract counterclaim. The Court does not strike these affirmative defenses for the same reason that it denied Mobius's Motion on this point above.

### IV. CONCLUSION AND RULING

For the foregoing reasons, Mobius's Motion for Final Summary Judgment [DE 51] is **GRANTED IN PART AND DENIED IN PART**. It is granted with respect to Count III of Serque's Counter-Claim, Wrongful Arrest of a Vessel, and Serque's first affirmative defense. In

all other respects, Mobius's Motion is denied. Also for the foregoing reasons, Serque's Motion for Partial Summary Judgment is **DENIED**.

      **DONE AND ORDERED** in Chambers in Fort Pierce, Florida, this 30th day of April, 2015.

Copies furnished to:
Counsel of record

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE